## Daniel Van Valkenburg et al. v. Elizabeth Rogers, Administratrix.

*Contract: Evidence: Duty of Court.* For the purpose of establishing a contract for the hiring of a certain boat, the plaintiff offered a letter directed to defendant,

in which he offered to charter the defendant's boat on specific terms. The defendant replied, by letter, in substance, that he would not like to charter the boat in the manner desired, but preferred to place the tug under plaintiff's control as regarded rates of charges, etc.

To this, plaintiff replied by letter, that he thought favorably of the plan, but desired to have some definite understanding as to what he was to give to defendant, and wished defendant to telegraph him, and whatever he wanted done regarding a bargain, he could do through a Mr. Westover.

Defendant telegraphed plaintiff March 17th, to commence fitting up the boat. Plaintiff thereupon took possession of the boat, fitted her up at his own expense, and used her until the following September, when plaintiff took possession of her.

In an action of Trover, the court charged that the several letters and telegram constituted a contract and entitled the plaintiff to the use of the boat during the season.

*Held*, that while it was the duty of the court to tell the jury what the correspondence contained, and what it meant, the court erred in determining that said correspondence constituted a contract. While it showed that the parties had begun to make a bargain, it also showed that no bargain was completed.

*Heard April 10th.   Decided April 13th.*

Error to Bay Circuit.

This was an action of trover brought to recover damages for an alleged conversion of special property in the steam-tug Union.

Upon the trial, the plaintiff offered in evidence certain letters and telegrams, of which the following are material portions:

"BAY CITY, February 26, 1866.

MESSRS. D. A. VAN VALKENBURG & SON:

GENTS—I wish to know if you would charter your tug Union for the coming season. I would fit her out well and pay for such outfit and pay you two thousand dollars for such charter, as follows: Five hundred dollars on the first of June, 1866, five hundred dollars on the first of August, 1866, five hundred dollars on the first of October, 1866, and five hundred dollars on the first of December, 1866; and on laying her up would guarantee her clear of all claims which might accrue while under such charter. Could use her in connection with the tug Wave much better than alone, and would do your towing as reasonable as you could get it done otherwise. Please let me hear from you soon.

Respectfully, &c.,           H. B. ROGERS.

LOCKPORT, March 7, 1866.

MR. H. B. ROGERS:

DEAR SIR—Yours of the 26th of February was duly received and contents observed. You make us an offer for the charter of the tug Union. We would not like to charter the tug in just the manner

that you state it. We will put the tug under your control, except for what little towing we have for ourselves, so that you can control the matter as you think best at a reasonable rate, so that you can take the entire management of the matter. I think by putting them together will be a benefit to both parties. You can rely on us to do anything that is right in the matter. If you think well of the plan, please write soon, and let us hear from you what you think about it.

Yours Respectfully,     D. A. VAN VALKENBURG & SON.

BAY CITY, March 12, 1866.

MESSRS. VAN VALKENBUGH & SON:

GENTS—Yours of the 7th inst. is at hand. I think favorably of your plan, and will take tug Union with the understanding that your towing is to be done at any time that you may call for it, but would like to have some definite understanding about what I am to do, or about what I am to give. If you know about what amount of logs you have to tow, please state how much I shall pay you besides doing your towing. It is high time that fitting and repairing had commenced. If I take her, painting and repairing should commence this week, and I would like to have you telegraph as soon as you get this, because nearly every other boat is ready to come out as soon as the ice clears from the river. I will do just as I agree, and as the season is far advanced, and little time left in which to make repairs, and it seems a long time to wait for an answer by mail, I think it would be best to let me hear from you by telegraph, and whatever you want done in relation to a bargain perhaps you could have it done through Mr. Westover, after informing him what you want.

Respectfully,     H. B. ROGERS.

TELEGRAM.

LOCKPORT, N. Y., March 17, 1866.

To H. B. ROGERS, Esq., Bay City, Mich.:

You can commence fitting up the tug Union.

D. A. VAN VALKENBURG & SON.

It was admitted that the letters signed H. B. Rogers were written and signed by the plaintiff and received by the defendant, D. A. Van Valkenburg. It was also admitted that the letters and telegram signed by D. A. Van Valkenburg & Son were written by defendant, D. A. Van Valkenburg, and the letters sent by mail, and the telegram by telegraph, and received by plaintiff.

[ Counsel for plaintiff stated a the time of offering in evidence said letters and telegram to the court and jury, that he offered said letters and telegram for the purpose of

proving a charter party or contract of hiring of the said steam tug between said Daniel A. Van Valkehburg & Son, and the plaintiff.]

To reading the same in evidence, the counsel for the defendants objected, because, if the said letters and telegram constituted a contract or charter party, it was void, not being stamped with an internal revenue stamp as required by the laws of the United States.

The Court overruled the objection and admitted the evidence.

It afterwards appeared in evidence, on the part of plaintiff that plaintiff took possession of said steam tug Union, immediately after the receipt of the telegram above set forth, which was on the day of its date, fitted her up in running order, and expended about five hundred dollars in making repairs and fitting her up, and that he continued in such possession up to the 3d or 4th of September, 1866, and used and operated the same; that on the said 3d or 4th day of September, 1866, said defendants took possession of said steam tug Union, and used and operated the same during the remainder of the season of navigation for said year '1866, which closed in the fore part of the month of December in that year. It also appeared in evidence, on the part of the plaintiff that the said defendant, Daniel A. Van Valkenburg, was owner of said tug.

After the counsel for plaintiff had rested their case, the counsel for defendants produced and read in evidence two letters, which were admitted by plaintiff's counsel to have been written by the plaintiff, and by him sent to the defendant, Van Valkenburg, the material portions of which said letters are as follows:

"BAY CITY, April 13, 1866.

Messrs. D. A. VAN VALKENBURG & SON:

GENTS—I have fitted up the tug Union in A 1 order, and had I been doing it for myself exclusively, I don't know where I would have made anything better; have had her thoroughly painted, and carpenter work all that she needed, which was no small item, besides

having her machinery thoroughly overhauled, and much of it made new; in short, have fitted her up for the whole season, everything as it should be, and since we have fitted her up, quite a number of blowers have made the remark that I would not have the tug very long, for they say that they intend to purchase her. Now, I want you to come here before you give any one an answer, and I want a chance to see what the tug can do for a season. These same men have said that the tug could not be made to do anything here. I wish you could have seen the way that the tug was laid up last fall.

They did not do anything with the machinery, but left it standing just as they had last used it, and there was not a blanket or quilt on board, nor compass, nor tool, and I cannot find them: nothing but the mattresses are on the boat.

I want a chance to buy the tug, and will bind myself to do your towing this season, and two or three seasons, at as fair or low rates as the lowest offered by any other parties, I care not who—and that, too, whenever you want it done, and would be more likely to do it by having two boats, and one of light draft, than any other parties here in that business.

Please let me hear from you without delay, and let me know when you will be here, for I want to see you. Whatever I do will be on the square.

Respectfully, &c.        H. B. ROGERS.

EAST SAGINAW, August 14th, 1866.

D. A. VAN VALKENBURG & SON:

GENTS—I met a man last evening, who said he was going directly to Lockport to buy the tug Union, and I have heard of others who would like to purchase also. I have made the tug do something this season, and kept her in running order when there was a possible chance. A few days ago, I painted her thoroughly, so that she looks better than any other tug here. Last season no person would buy her at any price. Do not sell without giving me a chance. Consider my bid five hundred dollars .more than any other. There will be chance enough to sell after close of navigation. Let me hear from you before doing anything, at least.

Respectfully, &c.,        H. B. ROGERS.

The counsel for defendant then called as a witness said defendant, Daniel A. Van Valkenburg, who testified that he was owner of the said steam tug, before and at the time of the writing of the said letters first above referred to, and at the time plaintiff took possession thereof, and that he continued to be such owner until a short time before the 3d day of September, when he sold an undivided half interest therein to said defendant, Luther Westover and one

Smith, a partner with said Westover, and that all of the negotiations between said plaintiff and said defendant, Daniel A. Van Valkenburg, in relation to the chartering and hiring thereof by plaintiff, or in relation to plaintiff's taking possession thereof, was by letter and telegram, and not otherwise.

The defendants further introduced evidence tending to prove that they took possession of said tug, with the consent of the plaintiff, and that, on or about the 3d day of September, 1866, there was a full and complete settlement between the plaintiff and said Van Valkenburg, of all matters growing out of said contract in relation to said tug.

The, counsel for plaintiff introduced evidence tending to prove that no such consent was given, and no such settlement took place.

And, thereupon, the counsel for said defendants requested the court to charge the jury that if said letters, dated respectively, February 26th, 1866, March 7th and March 12th, 1866, and the said telegram of March 17, 1866, constituted a contract or charter of hiring of said tug, between said plaintiff and said Van Valkenburg, or between said plaintiff and said D. A. Van Valkenburg & Son, that then it was only a chartering or hiring at will, and determinable at the pleasure of either party thereto, and that, in such case, said Van Valkenburg, or any other person by him authorized, was justified in taking possession of the said tug.

The court refused to so charge the jury, and defendants excepted.

The court charged the jury that the said letters and the said telegram taken together, constituted the contract of hiring of the said tug Union, between said plaintiff and said Daniel A. Van Valkenburg. To which said defendant excepted.

The court further charged the jury that, by the said contract consisting, as aforesaid, of the said letters and telegram, said defendant was entitled to the possession of and

18 Mich.—N.

use of said tug Union until the close of the season of navigation for the year 1866.

To which defendants excepted.

The jury rendered a verdict for plaintiff for $1,548.75.

*Wm. L. Webber,* and *H. H. Hatch,* for plaintiff in error.

1. As to the first assignment of error: If this court shall hold that the laws of the United States, prohibiting the introduction of unstamped instruments in evidence, apply to state courts, then it seems clear that if the letters and telegram referred to, constituted a contract between the parties, the same was not admissible in evidence, without having a stamp of five cents upon each piece of paper constituting the contract.—*14 U. S. Stat. at Large, p. 142.*

2. The principal question, however, arises upon the merits of the case, as specified in the remaining assignments of error.

The letters and telegram fail entirely to constitute a subsisting binding contract between the parties.—*1 Pars. on Cont. p. 475.*

A mere proposition is not enough. Nor is this any more a contract if it be in writing, than if spoken only. It becomes a contract only when the proposition is met by an acceptance which corresponds with it entirely and adequately.—*Ibid.*

In his charge the Circuit Judge lays no stress upon the acts of the parties, but finds the entire contract in said three letters and telegram.

3. Upon the facts stated in the record, whether there was a contract between the parties, was a mixed question of law and fact, and should have been left to the jury to decide under such instructions as to the law, as the court should think proper. In determining this question, the jury should have been allowed to take into consideration all the correspondence between the parties, and all

their acts in relation to the subject matter. And it was error on the part of the Circuit Judge to take this question from the jury, as he did by deciding that said three letters and telegram constituted a contract as matter of law; thus excluding from the jury the consideration of the letters of Rogers, dated April 13th and August 14th, and all the acts of the parties relative to the tug, from which their intentions might have been inferred.

*T. C. Grier*, for defendant in error.

There are substantially two errors alleged in the assignment of errors.

1. That the Circuit Court erred in allowing the several letters and the telegram relating to the hiring of the tug "Union" to be read in evidence; the counsel of the defendant having objected to the reading of them, "because if the said letters and telegram constituted a contract or charter party it was *void*, not being stamped with an internal revenue stamp as required by the laws of the United States."

To this objection we answer:

It is not a contract or charter party within the meaning of the revenue law. The plaintiff, Rogers, received merely a copy of the telegram produced by the manipulations of the operator. It was impossible for him to know whether the original filed with the operator at Lockport had been stamped. A stamp upon the copy received by him would have no effect, as the law has no provision for stamping copies. And the law which required a stamp on telegrams had been repealed, from which it is evident that it was not intended by Congress that telegrams should be stamped.

But if the telegram itself was such an acceptance as made a binding contract, the case is in no manner altered, for the telegraph comes within the *reason* of the

rule in regard to parol acceptance, viz., the impracticability of stamping such an acceptance.

An offer in writing accepted by parol, requires no stamp, and where the contract arises from an offer in writing, and there is a parol acceptance, as by complying with the proposed terms, the entire contract is not in writing and cannot be stamped.—*3 Pars. on Cont. 295; Crocker v. Foley, 13 Allen, 376; Chaplin v. Clark, 4 Exch. 403; Moore v. Gorwood, 4 Id. 481.*

The statute requiring stamps to be affixed, refers to such contracts as are within themselves "completed by the assent of the parties thereto." None of these letters constitute a contract or chartering of themselves. They were only propositions or offers.— *Crocker v. Foley, 13 Allen 380; Toby v. Chipman, Id. 126; McGowan v. Harbeck, 53 Penn.*

But had these letters constituted a contract or charter party within the meaning of the revenue law; it was not void or inadmissible for want of a stamp. To make such an instrument "invalid" the stamp must be omitted "with intent to evade the provisions" of the act.—*Act of 1865, U. S. Statutes at large, 481.*

The burden of proof is not on the party offering the instrument to show the innocence of the omission, but to render it inadmissible or invalid, evidence must be introduced to show the fraudulent intent.—*See authorities last cited, and Hitchcock v. Sawyer, 39 Vt. 412, 416.*

2. The second objection is, that the judge erred in refusing to charge the jury that the "contract of hiring the tug Union was only a chartering at will, and determinable at the pleasure of either party."

The letters between the parties, the telegram and the conduct of Rogers, constitute a positive agreement and an acceptance.

By instructing Rogers to go on and fit up the tug, Van Valkenburg, in substance, informed him that the terms

named were satisfactory; that he accepted them; that he wished no more formal bargain or instrument, and that he did not wish the services of Westover for any such purpose.

But even had it been intended by the parties, that a more formal instrument should be drawn between them, and had it been an express condition that such an instrument should be drawn, yet, it not having been drawn, we contend that the parties thereby waived it, and the letters and telegram were the evidence of the contract between them.— *Pearce v. Norton, 1 Fairfield, ( Maine,) 252 ; 3 U. S. Circuit ( N. J.) 1808 ; Blight v. Ashley, 1 Pet. C. Court, 15 ; 1 Abbott's Nat. Dig. 539 ; 1 Parsons Maritime Law, 231, 232.*

And this doctrine is carried to the extent, that where an agreement is made by parol, with an express understanding that it shall be reduced to writing, a party cannot escape its obligations by refusing to execute the written agreement, or proceed further with it. See cases last cited.

The court will never say that a party shall not recover upon a contract, merely because the parties at the time it was written, contemplated making another agreement of the same purport. The making of the latter in such case, would be a work of supererogation wholly immaterial and superfluous as to either of them.— *Rowland v. Phalon, 1 Bosworth, ( N. Y.) 60 ; Adams v. U. S. 1 Nott. & H. 192 ; Schooner Tribune, 3 Sumn. 344.*

The subsequent letters are of no importance whatever; they were written long after the contract was made, and after all its terms became binding. The letters could make no law, nor could they alter the meaning of the original contract, unless they, by their terms, authorized the defendant Van Valkenburg to take possession of the tug.

It is not claimed that they contained any such authority; but it is claimed that they go to show that there was no contract of hiring for the season. Had the contract been verbal, the letters might have been construed as an admis-

sion that it was a hiring at will; but as the terms of the contract were entirely in writing, what the contract really was, is no longer a question of fact, but purely a question of law, and it is entirely immaterial what either of the parties may afterwards have come to believe as to the legal effect of their agreement.—*Hepburn v. Snyder, 3 Barr. 72; 7 U. S. Dig. 28; 2 Cush. 80; 8 Mich. 66.*

And a letter written subsequently to the making of a contract by letter, cannot be looked at in construing such contract.—*Lewis v. Nicholson, 12 Eng. Law and Eq. 430; 3 U. S. Dig. 17.*

GRAVES J.

Rogers, the intestate, brought trover to recover damages, on the ground of an alleged conversion, by the plaintiffs in error, of what he claimed to be his special property in a steam tug called the Union.

It appears that in the winter and spring of 1866, Rogers was residing at Bay City, in this state, and that Van Valkenburg resided at Lockport in the state of New York. That the Union being at or near Bay City, and the property of Van Valkenburg, Rogers, in February of that year, opened a correspondence with Van Valkenburg, in order to charter the Union for the season, to run in connection with another tug called the Wave. It was thought that the tug belonging to Van Valkenburg would require some fitting up before commencing business, and that the season had already so far advanced as to make considerable diligence necessary to prepare her for service.

This opinion seems to have had much influence in placing Rogers and Van Valkenburg in the position they subsequently occupied.

Finally, in answer to a letter, written by Rogers on the 12th of March, Van Valkenburg telegraphed on the 17th of the same month to Rogers that he could commence fitting up the tug.

Upon the receipt of this telegram, Rogers took possession of the boat, prepared her for business at considerable expense, and then used her until the 3d or 4th of the following September, when the plaintiffs in error took possession and kept it till the close of navigation.

Rogers died after recovering judgment in the court below, and the cause was revived against his administratrix.

Upon the trial, Rogers, to maintain his action, contended that the correspondence, by letter and telegraph, embodied a contract giving to him the right of possession and use of the tug for the entire season.

This position was contested by the plaintiffs in error, who maintained that neither the letters and telegram relied upon by Rogers, when, standing alone, or taken in connection with the correspondence produced, constituted or proved any such contract. It having appeared that all the negotiations in relation to the transaction were by letter and telegraph, the Circuit Judge instructed the jury that the letters submitted by Rogers, being those of February 26th, March 7th and 12th, and the telegram of March 17th, taken together, constituted the contract between the parties for the hiring of the tug, and that it entitled Rogers to the possession and use of the boat until the close of the season of navigation for 1866.

This charge raises the vital question in the case. As there was no dispute as to the authenticity and due reception of the letters and telegram, and as the language employed was capable of being understood without extrinsic aid, it was the duty of the court to tell the jury what that correspondence contained, and what it meant. There was no error, therefore, in assuming to instruct the jury upon the subject. We think, however, that the instruction given was erroneous. It appears to us that while the correspondence showed that the parties had begun to make a bargain, it also showed that no bargain was perfected. The first letter of Rogers, being that of February 26th, contained a distinct proposition for

the hire of the tug for the season, but the answer of Van Valkenburg, under date of March 7th, contained an explicit rejection of that proposition, and proposed a different arrangement.

This offer of Van Valkenburg was vague and general, and fell short of an unqualified proposition to charter the boat to Rogers for the whole season, and the latter replied to it under date of March 12th, in the following terms:

"Yours of the 7th inst. is at hand, I think favorably of your plan, and will take tug Union, with the understanding that your towing is to be done at any time that you may call for it, but would like to have some definite understanding about what I am to do, or about what I am to give. If you know about what amount of logs you have to tow, please state how much I shall pay you besides doing your towing.

It is high time that fitting and repairing had commenced. If I take her, painting and repairing should commence this week, and I would like to have you telegraph as soon as you get this, because nearly every other boat is ready to come out as soon as the ice clears from the river. I will do just as I agree, and as the season is far advanced and little time left in which to make repairs, and it seems a long time to wait for an answer by mail, I think it would be best to let me hear from you by telegraph. And whatever you want done in relation to a bargain, perhaps you could have it done through Mr. Westover, after informing him what you want."

It was in reply to this that the short telegram was transmitted, and which was evidently meant to inform Rogers that he could commence the work of repairing at once, and leave the consummation of the bargain to a more convenient occasion.

In this the telegram was responsive to the sense of the letter of Rogers which called it out. From that letter it is quite obvious that Rogers was anxious to secure the

VAN VALKENBURG ET AL. *v.* ROGERS.

use of the vessel upon some terms falling within the general proposition, as he understood it, submitted by Van Valkenburg, and was desirous that she should be ready for business in the opening of navigation; that he was quite confident that if permitted to put the boat in condition for service, he would have no difficulty in completing an arrangement with Van Valkenburg, agreeably to the outlines stated in Van Valkenburg's letter of March 7th. But the closing paragraph of the letter, written by Rogers on March 12th, excludes the idea that such letter, or the telegram, in answer to it, was meant to close and perfect a bargain.

The parties were disposed to trust each other, and their correspondence shows that they meant that Rogers should commence fitting up the boat without delay, in order to have her ready for service, and that the bargain which they had corresponded about could be completed afterwards. It does not appear, however, that the bargain was ever accomplished.

The subsequent correspondence submitted in evidence by the plaintiffs in error, tends strongly to confirm the opinion already expressed, and there is no occasion, therefore, for reviewing it, or for inquiring whether it was right to disconnect it from the rest, when seeking to ascertain whether the correspondence constituted a contract or not.

As the letters and telegram did not establish a contract, the objection that no revenue stamp was affixed, of course, disappears.

According to the view of the case which has been presented, it is unnecessary to consider the other points discussed at the bar.

The judgment below should be reversed, with costs, and a new trial ordered.

The other Justices concurred.