FARNSWORTH and others vs. BRUNQUEST and others.

CONTRACTS. (1) *Owner of land not bound by an agreement to sell it, made by an unauthorized person.* (2) *Valid contract from owner gives equitable title.* (3, 4) *Construction of written contract, a question of law; parol evidence inadmissible.* (5) *Defendant's claim of equitable title in trespass* quare clausum, *not to be submitted to a jury.*

1. P. L., a nonresident, owning lands in this state, gave a power of attorney to J. L. (which was recorded) to sell and convey such lands, etc., with power of substitution. Afterwards J. L., without disclosing P. L.'s title, which was unknown to defendants, agreed verbally with them to sell them the land, and referred them to B. as *his* agent. No substitution of B. as P. L.'s agent appears, and he did not disclose P. L.'s title, but acted apparently as J. L.'s agent, and gave defendants J. L.'s written contract to convey the land, signed in the name of J. L. by him (B.) as agent of the latter. *Held,* that on the face of said contract, P. L. is not bound by it.

2. Said contract with defendants was not recorded, nor so executed as to be entitled to record. No subsequent ratification of it by P. L. is shown. After it was given, plaintiffs took a contract of sale of the same lands, in the name of P. L., executed by J. L., as her attorney, which was recorded; and subsequently, in pursuance of such contract, they took and recorded a conveyance of the land from P. L., executed in the same manner. *Held,* that the contract vested an equitable title, and the deed a legal title, under P. L., in the plaintiffs.

3. In an action for an alleged trespass on said lands, committed by defendants after plaintiffs took their deed of P. L., as above stated, it was error to admit parol evidence that J. L. or B. had sold lands of P. L. by contracts similar to that taken by defendants, which had been followed by conveyances from P. L., running to the persons named as purchasers in such contracts, and executed in the same manner as the deed to plaintiffs — and upon this evidence to submit to the *jury* as a *question of fact,* whether the contract taken by defendants was the contract of P. L.

4. The construction and effect of a written contract are matters of law, to be determined *by the court.*

5. If defendants have any equitable claim to a conveyance of said lands from P. L., by which plaintiffs would be equitably bound, this claim cannot be determined in trespass *quare clausum,* by submitting to a jury legal questions arising on adverse chains of title.

APPEAL from the Circuit Court for *Oconto* County.

Trespass *quare clausum*, for cutting timber on certain pine lands, the title to which was claimed by both parties, under contract from one Polly Ludington, the former owner of the land.    The facts are fully stated in the opinion.    The circuit court submitted to the jury, as a question of fact, upon the evidence, whether the contract under which defendants claimed was in fact the contract of Polly Ludington.    The jury found for defendants; and, a motion for a new trial having been over-ruled, plaintiffs appealed from a judgment upon the verdict.

*Robert Ellis*, with whom were *Gregory & Pinney*, of counsel, for appellants, argued that the case must depend upon the effect to be given the written contract, on which defendants relied, made by James Ludington, through his agent Brown, as against the title of plaintiffs, whose contract and deed came from Polly Ludington, the owner of the land, by James Ludington her attorney in fact.    Defendant's contract from James Ludington does not purport upon its face to be the contract of Polly Ludington; nor does it purport to be a contract with any one as agent, the principal being undisclosed. There was no evidence of any written contract between Polly Ludington and defendants; and it was therefore error for the court to leave this question to the jury.    Parol evidence was inadmissible to connect her with the contract.    It is not a case of one contracting as agent without naming his principal, or where one who is only an agent makes the contract in his own name without referring to any principal, in which cases parol evidence has been admitted to show who was the real party to the contract.    In this case all negotiations were merged in the written contract, and its provisions cannot be contradicted by resorting to the conversations or negotiations preceding it.    The contract under which defendants claim was made by the agent Brown, and it names as the principal James Ludington, on whose behalf he made it.    There was no proof that Brown ever acted or assumed to act as agent for Polly Ludington.    Parol evi-

dence is not competent to contradict the contract, and show that some one else is the real principal. *Fenly v. Stewart*, 5 Sandf., 101 ; *Pentz v. Stanton*, 10 Wend., 271 ; *Stackpole v. Arnold*, 11 Mass., 27 ; *Newcomb v. Clark*, 1 Denio, 226. To allow such evidence to be introduced is in violation of the statute of frauds, and of the fundamental rule of evidence which will not permit a written agreement to be contradicted by parol proof. There is no evidence that James Ludington assumed or intended to bind Polly Ludington, and plaintiffs ought not to be affected by other transactions, which were admitted in evidence to connect Polly Ludington with defendants' contract, without proof, either direct or presumptive, that they had notice of such facts at the time of their purchase.

*Neville, Tracy & Neville, contra*, contended that the defendants, having paid the money for the land to Brown, who had made the written contract for James Ludington, and having previously dealt with James Ludington and Brown in the same way, and received deeds signed "Polly Ludington, by James Ludington her attorney in fact," were warranted in relying on the contract as that of Polly Ludington. The power of attorney from Polly to James gave him as complete authority as could be given, and must certainly be held to authorize the appointment by parol of an agent to make contracts, full power of substitution being given.

RYAN, C. J. The controversy in this case turns on the title of the respective parties to the *locus in quo*. It is not material to consider whether the rulings of the court below would have been correct, had the parties both claimed title from a common source. For it is evident to us, as matter of law, that they do not.

The land had belonged to James Ludington. He conveyed it to Polly Ludington, a nonresident. She gave him a power of attorney to sell and convey, etc., with power of substitution. Both instruments were recorded in the proper county. After-

wards, James Ludington made a loose, verbal agreement with one of the respondents to sell them the land. The respondents did not know of Polly Ludington's title, and were dealing with James Ludington as the owner of the land. James Ludington did not disclose Polly Ludington's title, was apparently acting in his own right, and referred the respondents to Brown as his agent. No substitution of Brown as attorney for Polly Ludington appears. The respondents went to Brown on James Ludington's suggestion. Brown did not disclose Polly Ludington's title, acted apparently as James Ludington's agent, and gave the respondents James Ludington's written contract to convey the land, signed in the name of James Ludington, by Brown as his attorney. This contract is dated in March, 1865, was not recorded, and was not so executed as to entitle it to record.

This was manifestly, in fact and in law, a transaction between James Ludington, in his own right, and the respondents. Whatever may have been the rights of Polly Ludington, as between her and James Ludington, it is very certain that, as between her and the respondents, she was not bound by the contract. She might ratify it, in divers ways, so as to bind herself, as between her and the respondents, to convey. No such facts appear. And, on the face of the contract, it is no more her contract, and she is no more bound by it, than if it had been executed, just as it was, by any stranger. Whatever the respondents could take under the contract, they took from James Ludington in his own right.

In November, 1866, the appellants took a contract for the sale and conveyance of the land from Polly Ludington, executed in her name by James Ludington as her attorney, soon after recorded in the proper county. In October, 1867, this contract ripened into a conveyance of the land by Polly Ludington to the appellants, executed in the same way, and soon after recorded. The contract vested an equitable title, and the deed the legal estate, under Polly Ludington, in the appellants.

In the winter of 1867 – 8, the alleged trespasses were committed; they were justified under title; and, on the trial, both parties relied on their title as above stated.

Parol evidence was given by the respondents tending to show that James Ludington and Brown had sold other lands of Polly Ludington by contracts similar to that taken by the respondents, which had been followed by conveyances to Polly Ludington, executed in the same way as her deed to the appellants. It is singular that, as parol evidence on the question was considered competent, neither Polly nor James Ludington nor Brown was examined to explain the double sale of the land by Polly and by James. But such evidence was admitted. And the circuit judge submitted to the jury, as a question of fact, on the evidence, whether the contract taken by the respondents was or was not the contract of Polly Ludington.

This is fatal error. The construction and effect of the contract was matter of law for the court to pass upon. The rule is too familiar for discussion. Certainty and security of written title would be at an end, if the rule were otherwise.

It is possible that the respondents may have some equitable claim to a conveyance from Polly Ludington. It is possible that the appellants may be equitably bound by it. These are questions, if they exist, to be settled in an equitable proceeding, to which Polly and James Ludington and these appellants and respondents should be parties. But it is very certain that no such equitable remedy can be found, in an action between these parties *quare clausum fregit*, by submitting to the jury legal questions arising on the adverse chains of paper title.

The judgment of the court below must be reversed.

*By the Court.*— Judgment reversed.