112    647
117    )654

MILWAUKEE CARNIVAL ASSOCIATION, Appellant, vs. KING, FOWLE & McGEE COMPANY, Respondent.

*December 19, 1901 — January 7, 1902.*

*Contracts: Construction: Court and jury: Evidence.*

1. A written contract by which defendant agreed to pay to plaintiff, a carnival association, a certain sum for the privilege of publishing "The Official Souvenir Program of the 1899 Carnival," is not ambiguous or obscure, and its interpretation is for the court. It was improper, therefore, to admit evidence of the oral understanding of the parties or as to their personal interpretation of the contract.

2. Such contract gave defendant the right to issue and publish the official program in such form and with such features as would induce people to purchase it as a souvenir of the occasion; and this right was not infringed upon by the publication, under authority from the association, of a list of the carnival events in a book descriptive of the city and its industries.

APPEAL from a judgment of the superior court of Milwaukee county: ORREN T. WILLIAMS, Judge. *Reversed.*

This action is brought upon the following contract:

"Milwaukee, April 29, 1899.

"To the Milwaukee Carnival Association, City.

"*Gentlemen :*— We hereby agree to pay to your association the sum of $200.00 as a bonus for the publication of the Official Souvenir Program of the 1899 Carnival, to be paid immediately upon the issuing of the work.

"Yours truly,

"KING-FOWLE-McGEE Co.,

"By H. R. KING, President.

"It is calculated to issue the work not later than June 20, 1899.

"Accepted April 29, 1899.

"E. P. HACKETT, Vice-President."

The answer admitted the contract, but alleged that defendant was to have an exclusive privilege thereby, which it did not secure, because the plaintiff had already sold the privilege to another person; that such other person had been allowed to use and print the official program, whereby the defendant was greatly damaged. Under a counterclaim the defendant claimed it had been damaged in the sum of $500.

A trial by the court and jury resulted in a verdict for the defendant. The court denied plaintiff's motion for a direction of a verdict, and also a motion to set aside the verdict and for a new trial. Due exceptions were made thereto and to parts of the charge. From a judgment for defendant the plaintiff takes this appeal.

For the appellant there was a brief by *Hoyt & Olwell*, and oral argument by *L. A. Olwell.*

For the respondent there was a brief by *Kanneberg, Mc-Gee & Cochems*, and oral argument by *A. Kanneberg.*

BARDEEN, J. Whatever rights defendant secured are ascertainable by and referable to the written contract offered in evidence. The principle is elementary that its terms cannot be added to or suffer diminution by testimony

of the previous understanding of the parties or of their acts subsequent thereto, where there is no ambiguity. Being in writing, it must be interpreted and construed according to the language used. It is not claimed that its terms were obscure or ambiguous. Hence it was clearly improper to permit evidence to be received of the oral understanding of the parties or as to their personal interpretation of the contract. The rules mentioned were violated by permitting one of defendant's officers to testify as to his understanding of what he was to receive for the $200 which was offered in the proposal to the plaintiff. They were violated again when the defendant was allowed to introduce a letter written by plaintiff's secretary a few days after the contract was made, giving his interpretation of it. It was for the court, and not the parties, to. ascertain what the contract was, and to construe it. *Ranney v. Higby*, 5 Wis. 62; *Diefenback v. Stark*, 56 Wis. 462; *Farnsworth v. Brunquest*, 36 Wis. 202.

The evidence clearly shows that the list of carnival events had been given to the newspapers and published before defendant made the proposition sued upon. That proposition contained no reference to an exclusive privilege of publishing the mere program of events. The right given by the contract was to issue a publication containing the official program, and gotten up in such form as would induce people to purchase it as a souvenir of the occasion. The fact that it was to be issued under the sanction of the *Carnival Association*, and designated as an "official souvenir program," was one the defendant, no doubt, anticipated would give it sale value. The features which were to give it the character of a souvenir were exclusively within the control of the defendant. It is not claimed that the mere list of events had any special commercial value. It was the fact that it had official sanction that was supposed to give it importance. In line with this idea, the defendant was permitted to intro-

duce in evidence a contract of the association with one Brown, in which the latter was authorized to issue a work under its auspices entitled " Milwaukee and its Commercial Industries." The publisher was to incorporate in it matter descriptive of the objects and events of the carnival, and no other publication of a similar nature was to be issued under the authority of the association, except the official program of events. The defendant was also permitted to put in evidence a copy of the publication so issued. It contained a write-up of the various commercial industries of the city, a description of the principal features of the proposed celebration, a list of the events as scheduled, and purported to be published " under the auspices of the *Carnival Association.*" The court also permitted witnesses, both for plaintiff and defendant, to testify as to their interpretation of the contract. The court was undoubtedly wrong in this, regard. The court, and not the witnesses, should have construed its provisions, unless there was such doubt about it that he would have been warranted in submitting the matter to the jury under the rule mentioned in *Vilas v. Bundy,* 106 Wis. 168, 176, and cases cited. To us it seems plain that the defendant secured the right to publish the official program in such form and with such features as would give it the character of a token of remembrance, a souvenir, a memento of the occasion. The use of the word " souvenir " indicates that the publication was to be something more than a mere list of events. Being called " official " might, and probably did, give it additional significance; but that word alone is not of overwhelming weight. The whole contract must be construed together in the light of the project in view. As already suggested, it contemplated publication of the program of exercises in such form as would induce people to purchase it as a souvenir of the celebration. We are unable to see how this right was infringed upon by the publication of the list of events in the so-called " Brown book." Excluding

the evidence improperly admitted, there was no evidence requiring a submission of the case to the jury. A verdict for plaintiff should have been directed.

The charge of the court permitted the jury to determine not only what the contract really was, but also allowed them to determine how it it was understood by the parties. This was clearly erroneous. Under the contract in evidence it was the judicial function to ascertain and interpret it, and then allow the jury to say whether it was breached.

*By the Court.*— Judgment reversed, and the cause is remanded for a new trial.