AMERICAN JOBBING ASS'N v. JAMES.

No. 88.    Opinion Filed July 13, 1909.

(103 Pac. 670.)

1.    CONTRACTS—Requisites and Validity—Questions for Court. Where the transaction between two parties consists entirely of letters and telegrams, it is for the court to determine whether such correspondence constitutes a contract, and where such correspondence contains no technical words or terms of art, and the effect thereof depends merely upon the construction and meaning of the instrument, and not upon extrinsic facts and circumstances, such construction and interpretation are wholly for the court.

2.    ESTOPPEL—Pleading in Avoidance of Defense. In an action on a contract, defendant answered that a material condition of the contract had been broken, and that the rights of the plaintiff thereunder had been forfeited. Plaintiff replied as to this issue by general denial. Upon trial testimony was admitted, over the objection of defendant, tending to show that defendant had waived the conditions alleged to have been broken by plaintiff, by which he was estopped from taking advantage of the forfeiture, and the court on such evidence instructed the jury upon the question of waiver. Held, that such evidence and the instruction based thereon were not within the issues formed by the pleadings and should have been excluded.

(Syllabus by the Court.)

*Error from District Court, Bryan County; Malcolm E. Rosser, Judge.*

Action by E. D. James against the American Jobbing Association, or Williard D. Main. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

This proceeding in error is brought from a judgment of the district court of Bryan county in an action wherein defendant in error, hereafter called "plaintiff," seeks to recover against plaintiff in error, hereafter called "defendant," on an agency contract. On November 19, 1904, plaintiff entered into a contract with defendant, whereby he undertook and agreed to act as traveling salesman for defendant, for which he was to receive as com-

pensation commissions on his sales. The commissions received by him were to be graded according to the character of the sale and the rating of the buyer, and such commissions were divided into seven classes, which are designated in the contract as "classes A, B, C, D, E, F, and G." The commission on these classes ranged from 5 to 20 per cent. . The contract provided as to class F as follows:

"On all mail orders received by first party [defendant] from customers of second party [plaintiff] herein, which orders have been accepted by the first party herein and have been settled for in cash or by purchaser's notes, the said first party agrees to. pay to the said second party a commission of 5 per cent., and the said first party herein hereby guarantees to the said second party that his commission on such mail orders received and accepted by the first party shall amount to not less than $500.00 during twelve months actual, continuous employment of the second party herein under the terms and conditions herein of this contract. And it is hereby agreed by the parties herein that no part of the commission on mail orders received, accepted and settled for shall become due and payable to the said second party until he has acted continuously in the employment of the first party herein and complied with the terms and conditions of this contract for a period of twelve consecutive months."

This clause of the contract is the basis of this action. The contract further provides:

"The second party herein agrees to furnish the first party with a written report every Saturday night during the time of his employment which report shall contain the name of each town covered by him during the week, the names of the merchants from whom he solicited but did not receive orders, and the date of said solicitation, giving fully the reason for his failure to receive an order, also itemized account of amount paid out for expenses, including railway and bus fares, hotel and livery hire."

Immediately upon the execution of this contract, plaintiff entered into and continued . in the employment of the defendant for more than 12 months. For a period of 25 weeks immediately after entering into the employment of the defendant, plaintiff made weekly reports as agreed in the contract; but said reports

did not in all respects comply with the terms of the contract, in that he failed to give the names of the merchants from whom he had solicited and had failed to receive orders, and the date of such solicitation, and failed to give the reasons for his failure to receive orders from such merchants; but defendant made no objection to these defects in the reports or to any other matter relative to the reports. Such reports were made upon blanks furnished by defendant to plaintiff; but, after the expiration of 25 weeks, defendant ceased sending blanks to plaintiff, and no further reports were made. The contract also provides as follows:

"As soon as the second party proves his ability and qualifications as a salesman by taking orders on the regular order blank furnished by the first party herein, amounting to $5,000.00 from responsible merchants, who are, by the first party herein deemed worthy of the credit therein extended to them by the second party, the said first party hereby agrees that in addition to the commission allowed said second party as provided in the above paragraphs a, b, c, d, e, and f, it will pay an additional commission of 2 per cent. on all orders in excess of the said $5,000.00 taken by said second party in accordance with the terms of this contract."

On June 6, 1905, following the execution of the contract in the preceding November, defendant wrote plaintiff a letter, which in part reads as follows:

"You have now passed the $5,000.00 mark and as per your contract you are entitled now to 2 per cent. more commission on all orders. For fear you have misplaced your contract, we inclose one herewith and will state that if you prefer straight 16 per cent. on all future orders in lieu of the commission set forth in your contract we will be pleased to make the change for you, but if you prefer going on on the same terms as set forth in your contract, to the end of the year, we are willing that you should do so."

To this letter plaintiff on June 14, 1905, replied by letter in in part reads as follows:

"I have gotten a start out here and will be sending in some of the best business now of either Mr. Campbell or any of the rest now, and I will take the 16 per cent. on all business for

think that will be best for me and that is fair enough profit and I can make some nice money out of that for you and me."

After this plaintiff was allowed upon the books of defendant and was paid 16 per cent. on all orders sent in by him. On September 26th defendant again wrote plaintiff as follows:

"In answer to your communication of September 24th, I wired you to-day as follows: 'We will send you thirty-five dollars a week to be expended in actual expenses in taking orders, to be deducted from your commission. Send Sunday address each week. If work steadily will soon get ahead. Will allow hereafter twenty per cent. straight on accepted settled orders.' I mean by this that the American Jobbing Association will hereafter pay you 20 per cent. straight on orders which are accepted, shipped and settled for by the customer as provided in the order, instead of 16 per cent. as heretofore paid you, and they will advance you $35.00 a week for expenses only, as long as you keep steadily at work and take no less than one good order a week, and as soon as you get in orders enough which are shipped, we will let you draw commissions after first deducting from the amount due you the $35.00 a week advanced."

. This proposition was accepted by plaintiff, and after this date he was allowed on the books of defendant and was paid 20 per cent. on all orders sent in by him. The evidence neither of plaintiff nor defendant discloses whether defendant ever received any mail orders from the customers of plaintiff. He was never allowed upon the books of defendant nor paid any commission on such orders. Plaintiff does not attempt to show what the commissions on such orders would amount to, but by this action seeks to recover on that clause of the contract previously quoted which guarantees to him that his commission on such orders received and accepted by defendant shall amount to not less than $500 during 12 months' actual, continuous employment under the terms and conditions of the contract.

One of defendant's defenses is that the correspondence between them by means of letters and telegrams had the effect to create a new contract between them and to supersede the contract originally executed, and thereby eliminated that section of

the contract upon which plaintiff depends for recovery in this action. The court instructed the jury that the effect of these letters was only to change the rate of commission after plaintiff had procured $5,000 of orders which had been accepted by defendant from the per cent. allowed on the respective classes to a flat rate of 16 per cent. on all orders, regardless of class; in other words, that these letters simply changed the commission to a rate of 16 per cent. at first, and afterwards to 20 per cent., and left the guaranty of $500 if plaintiff complied with the terms and conditions of the contract unaffected. To this instruction defendant excepted and of it complains here.

*A. H. Ferguson* and *C. C. Hatchett,* for plaintiff in error, citing: *Chapman v. Railway Co.* (Mo.) 48 S. W. 646; *Carp v. Insurance Co.* (Mo.) 79 S. W. 757; *Insurance Co. v. Thorp,* 48 Kan. 239; *Insurance Co. v. Johnson,* 47 Kan. 1; 8 Enc. P. & P. 10; 16 Cyc. 808, 809.

*W. E. Utterback* and *V. B. Hayes,* for defendant in error.

HAYES, J. (after stating the facts as above). The original contract was in writing and was signed by both parties. All transactions between defendant and plaintiff since the execution of the contract have been by means of letters and telegrams. No oral communication has occurred between them. The defendant's first contention, that the question whether the correspondence between them constituted a contract independent of the original contract, and superseded it, and that the construction of the same should have been submitted to the jury, is without merit. Where the transaction between two parties consists wholly of letters and telegrams, it is for the court to determine whether such correspondence constitutes a contract. *Lea & Beaman v. Henry,* 56 Iowa, 662, 10 N. W. 243; *Ranney v. Higby,* 5 Wis. 62. The construction and interpretation of a contract made entirely by letters and telegrams, where they contain no technical words or terms of art, and their effect depends merely upon the construction and meaning of the instruments, and not

·upon extrinsic facts and circumstances, are wholly for the court, and a submission, under such circumstances, of such question to the jury, would be error. *Falls Wire Mfg. Co. v. Broderick et al.,* 12 Mo. App. 378; *Van Valkenburg et al. v. Rogers,* 18 Mich. 180; *Goddard v. Foster,* 17 Wall. 123, 21 L. Ed. 589. And this rule obtains although the language of the correspondence is obscure and inconsistent in its different parts, making it difficult to understand. *Russel v. Arthur,* 17 S. C. 477.

Nor do we think the trial court erred in construing the effect of the correspondence between plaintiff and defendant as being a modification of the original contract to the extent that it changed the rates of commission, but that it did not in any manner otherwise effect the terms of the contract or supersede it. In the letter of June 6th, defendant states that plaintiff had reached the $5,000 mark, and, under the contract, that he was entitled to 2 per cent. more commission on all future orders. At this time, under the provision of the contract, the commission on each class of orders would have been increased 2 per cent. and the rates of commission would have ranged from 7 per cent. to 22 per cent. Plaintiff states in his letter that, if defendant preferred a straight 16 per cent. rate on all future orders in lieu of the commission set forth in the contract, he would be pleased to make the change for him. The language used by him is that the straight 16 per cent. will be allowed *in lieu of the commission* set forth in the contract, not *in lieu of the terms and agreements* of the entire contract; nor did he state, if plaintiff desired to make a new contract providing a flat rate of 16 per cent. on all orders, that such contract would be made by defendant in lieu of the original contract. The clear import of the language appears to us to be that by this letter defendant proposed to substitute for the graduated scale of commissions on the various classes or orders, ranging from 7 to 22 per cent., a uniform rate of 16 per cent., and that such was the intention of defendant in accepting the proposition. There is nothing in the correspond-

ence to indicate that the contract was to be abandoned or its terms changed in any other respect.

A second defense relied upon by defendant was that plaintiff had failed to comply with the terms and conditions of his contract, in that he failed to make weekly reports as provided therein. Upon this defense the court instructed the jury ·that plaintiff had not complied with the terms of .the contract and had given it no concern, but if they should find from the evidence that for a considerable length of time plaintiff furnished reports upon blanks that had been previously furnished him by defendant, and that the reports complied with· the terms and conditions of the contract, ·and that afterwards the company refused or failed to furnish him with any more blanks for the purpose of making these reports, and for that reason he made no further reports, then they might find from that fact that the company had waived that part of the contract.  He also instructed them that, although the reports made by plaintiff did not comply with the terms and conditions of the contract, in that they failed to give the names of the merchants to whom he did not sell goods and the reason he did not sell them, if they found that the reports were received by the company without objection as to the manner in which they were, made out or as to their contents, the jury was at liberty from these circumstances to find that the defendant waived the terms and conditions of the contract to that extent.  Defendant's letter of September 26th changed the uniform rate of 16 per cent. on all orders to a uniform rate of 20 per cent.· No other change in the contract is made by this letter.  Other matters are referred to and insisted upon; but such matters are provisions of the original contract.  Plaintiff, in his petition, alleges the execution of the original contract and avers a full performance by him of the terms and conditions therein for a period greater than 12 months.  Defendant by his answer admits the execution of the contract; but, in addition to alleging that the same had been superseded by subsequent contracts, he denies that the original contract had been fully performed by plaintiff.  He

further avers matter constituting a counterclaim against plaintiff. To this answer plaintiff replied, denying the allegations constituting the counterclaim, and also denying that he had in any way breached the contract. The uncontroverted evidence is, however, that plaintiff did not fully perform the terms and conditions of the contract requiring him to make weekly reports to the defendant. Over the objection of the defendant, he was permitted to introduce evidence tending to show that defendant had waived this condition of the contract, and the court instructed the jury that, if they found certain facts, they were at liberty to find that defendant had waived the terms of the contract requiring the weekly reports. This action of the court was error. Under our Code, the facts relied upon as a ground of action or defense must be clearly and concisely stated in the pleadings, so that the opposite party may not be taken by surprise upon the trial. The new matter introduced to establish the waiver by which defendant would be estopped from claiming a forfeiture of the contract by reason of the violation thereof was not put in issue by the pleadings and evidence to sustain the same, and the instruction of the court based thereon is unwarranted under the pleadings as they now exist. A waiver cannot be proved unless it is within the issues made by the pleadings, and, where facts constituting a waiver are relied upon as an estoppel, they must be especially pleaded. *Dwelling-House Ins. Co. v. Johnson et al.*, 47 Kan. 1, 27 Pac. 100; *Western Home Ins. Co. v. Thorp*, 48 Kan. 239, 28 Pac. 991. If plaintiff desires to present the issue of waiver as part of his cause of action, he should amend his pleadings accordingly.

For this error, the judgment is reversed, and the cause remanded.

Dunn and Turner, JJ., concur; Kane, C. J., not sitting; Williams, J., disqualified and not sitting.