ATWOOD v. ROSE, *et al.*

No. 1451.   Opinion Filed March 19, 1912.

(122 Pac. 929.)

1.  **PLEADING**—Allegations in General—Construction—Demurrer. In the construction of a pleading, challenged by demurrer before trial, nothing will be assumed in favor of the pleader which has not been averred, as the law does not presume that a party's pleadings are less strong than the facts of the case warrant.

2.  **FRAUDS, STATUTE OF** — Sufficiency of Memorandum — Correspondence.   A complete contract, binding under the statute of frauds, may be made through the medium of letters, writings, and telegrams, signed by and passing between the parties, when such writings are so related to the subject-matter, and are so connected with each other, that it may be fairly said they constitute one paper relating to the contract.

3.  **CONTRACTS**—Principal and Agent—Validity—Authority of Agent —Question of Law.   Where a transaction between parties, and the authority of an alleged agent in relation thereto, consists entirely of writings, letters, and telegrams, it is for the court to say, as a matter of law, whether such writings, construed together, constitute a contract or show an authority in the agent.

4.  **PLEADING**—Motions—Making More Definite and Certain. Where a petition alleges a contract for the sale of lands, made between plaintiff and an agent of defendants, and that the authority of the agent is in a writing subscribed by defendants, **held**, not error to require the plaintiff, on motion of defendants, to set out a copy of the writing alleged to constitute such authority.

5.  **SPECIFIC PERFORMANCE**—Contracts Enforceable—Authority to Make.   In a suit for specific performance of an alleged contract for the sale of land, where it is alleged that the contract was made by an agent, authorized in writing to make same by the two joint owners of the land, and that such authority of the agent consisted of various letters and telegrams, it is essential, to sustain such authority, that the writings relied upon show that the agent, at the moment of the attempted sale, was clothed with authority from both of the joint owners to make the sale to the purchaser, upon identical terms, and that it was so made.

6.  **CONTRACTS**—Validity—Mutuality.   No contract is complete without the mutual assent of all the necessary parties to all its terms.

7.  **VENDOR AND PURCHASER**—Requisites of Contract—Offer and Acceptance.   An offer to sell imposes no obligations till it is accepted according to its terms.

8.    **SAME.** A proposal to accept or an acceptance of an offer of sale on terms varying from those offered is a rejection of the offer.

(Syllabus by Brewer, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge,*

Action by S. Atwood against Mrs. Forster Rose and another. Judgment for defendants, and plaintiff brings error. Affirmed.

*Dumars & Vaught* and *Rolin E. Gish,* for plaintiff in error.

*Shartel, Keaton & Wells,* for defendants in error.

Opinion by BREWER, C. This is a suit for specific performance of a contract to sell land. It was filed in the district court of Oklahoma county on the 31st day of July, 1909. A motion to make more definite and certain being sustained to the first amended petition, the second amended petition was filed, to both counts of which a general demurrer was sustained.

The main question to be decided in the case being as to whether or not the second amended petition states facts sufficient to constitute a cause of action, we here insert the material parts of said amended petition, as follows:

"That on the 26th day of July, 1909, the defendants, Mrs. Forster Rose, a widow, and James Stanton, owned in fee and were in possession of lots 1, 2, 3, and 4, in block numbered 1, Orchard Park addition to Oklahoma City, Okla. That the Standard Investment Company, composed of J. W. Wagnon and D. B. Ellis, were the authorized agents of the said defendants to sell the above-described property, and that said authority to sell was in writing and subscribed by said defendants; said authority in writing consisting of numerous letters and telegrams from the said defendants, Mrs. Forster Rose and James Stanton, to the said J. W. Wagnon, and from the said J. W. Wagnon to the said Mrs. Forster Rose and James Stanton, copies of which letters are herewith attached and marked Exhibits 'B,' 'C,' 'D,' 'E,' 'F,' 'G,' 'H,' 'I,' 'J,' and 'K.' That the said defendants on the said date of July 26, 1909, through their authorized agent, J. W. Wagnon, made an agreement in writing with this plaintiff whereby they agreed to sell and convey by

good and sufficient warranty deed, said premises, in considera-tion of the sum of $20,000, to be paid them by the plaintiff as follows: $1,000 in hand paid on said date; the sum of $9,000 to be paid upon the execution of the deed from said defendants; and the balance of $10,000 to be paid in equal installments on the 1st day of March, 1910, and the 1st day of March, 1911, re-spectively. That said agreement in writing was made in form of checks and receipt. That said receipt was executed on said day by the said J. W. Wagnon as the agent of the said defend-ants, acknowledging the receipt of $1,000 and stating the condi-tions of said sale on the face of said receipt, a copy of which is herewith filed and marked Exhibit 'A' to this petition. Second. That the plaintiff has performed all the conditions precedent on his part, and on the 26th day of July, 1909, paid to the said J. W. Wagnon, as the agent of said defendants, the sum of $1,000, and hereby tenders to the defendants the sum of $9,000, and offers to execute mortgage and notes as agreed upon in said contract. That plaintiff has demanded of the said J. W. Wag-non, as the agent of the said defendants, a conveyance of said property to him; but the said defendants then through their said agent, and ever since, have refused to execute and deliver said conveyance. Third. That the plaintiff has always been ready and willing, and still is, to pay said purchase money and to exe-cute said notes and mortgage as agreed upon, and herewith ten-ders the same into the court for the use and benefit of de-fendants.

"Second cause of action: For the second cause of action, plaintiff states: First. He repeats and realleges all the matters set forth in paragraph 1 as fully as if specifically set out and in-corporated therein. Second. That the plaintiff has duly per-formed all the conditions precedent on his part. That on or about the 26th day of July, 1909, plaintiff paid to the said de-fendants the sum of $1,000 and requested an immediate execu-tion by the said defendants of a deed to the premises hereinbe-fore mentioned, but that the defendants thereafter refused and do now refuse to execute the said deed. That the plaintiff was at all times and still is, ready and willing to pay the said pur-chase money and execute the said notes and mortgage as agreed upon, and that by the refusal of the defendants to perform their part of the contract as aforesaid plaintiff has been damaged in the sum of $10,000."

We copy only such parts of the correspondence, which is lengthy, as are material here:

Atwood v. Rose et al.

Exhibit B: "July 22, 1909. Mrs. Forster Rose, Galveston, Texas—Dear Madam: The parties who have been figuring on buying your property on West Main street for $25,000.00 on terms of $8,000.00 down and the balance in five or six years time at 8% interest on the deferred payments claim they cannot figure this property out as a good investment, etc. * * * Am now figuring with another party by the name of Mr. Atwood. I have shown this property to Mr. Atwood and his son-in-law and they have made me an offer $20,000.00 on terms of $10,000.00 cash, $5,000.00 on or before March 1, 1910; and the other $5,000.00 on March 1, 1911; with 8% interest on the deferred payments. Mr. Atwood and his son-in-law also stated that they would give all of the $10,000.00 of the balance in cash to you on March 1st, 1910, providing you would not wish to carry as much as $5,000.00 for one year. I will also state that Mr. Atwood noticed that some of the outside walls of the building were cracked and he does not consider the building cost over nine or ten thousand dollars, and he does not figure the lots are worth over nine thousand dollars on the present market price. In other words, he feels that he is giving all the property is worth on his offer of $20,000.00, and unless we can accept of his offer, he has other property that he is going to buy. I know that it will be useless for us to try to get more than $20,000.00 from Mr. Atwood, and he insists that we let him know at once whether his offer will be considered. I have promised Mr. Atwood that you will tele-graph me either Saturday of this week or Monday of next week, whether his offer would be accepted or rejected, and if rejected, Mr. Atwood as stated above, will then buy another piece of property that he is now figuring on. I presume that you under-stand from what has been stated above that you can if you de-sire, get $10,000.00 cash and all of the balance in cash not later than March 1st, of next year. I only wish that Mr. Stanton was here and we could take this matter up in person with him, etc. * * * I really consider this offer of sufficient importance to you to justify a careful investigation and consideration before turning same down. Also, to show you how I feel about this matter I am willing to charge only $300.00 commission in case you decide to accept of Mr. Atwood's offer of $20,000.00. * * * Please do not forget to telegraph me not later than next Saturday or Monday, as we cannot hope to hold Mr. At-wood any longer than that time. Very truly yours, J. W. Wag-non."

Exhibit C: "Galveston, Texas, July 24, 1909. Mr. J. Wagnon. Oklahoma City, Okla.—Dear Sir: Yours of the 22nd received. In reply will say, Mr. Stanton is still in Canada, etc., * * * for my part I am willing to accept Mr. Atwood's offer, but of course, cannot answer for Mr. S. Am writing him today and sending your letter to him. Will advise him that I am willing to sell on the terms of $10,000.00 cash and $5,000.00 on March 1st, 1910, remaining $5,000.00 March 1st, 1911, with 8% interest, mortgage on place and building insured our favor, etc. * * * I shall ask Mr. Stanton to wire me his decision immediately on receipt of my letter, and will ask that you get Mr. Atwood to wait until I can hear from him, as I feel that I am more apt to get an affirmative reply after he reads your letter than if I were to wire him. Please let me know if Mr. A. will wait till I hear. * * * It occurs to me to ask you to see about taxes. We have just finished paying taxes for last half of year, but as I do not hold receipt, do not know what year it is for, tho presume it is for 1908. I should not be willing to sell for $20,000.00 and pay another year's taxes, so please let me know at once, if the full expense we will have is commission and abstract. * * * Very truly yours, Mrs. Forster Rose."

Exhibit D: "July 26th, 1909. Mrs. Forster Rose, Galveston, Texas—Dear Madam: I received your letter of the 24th inst. by special delivery, and will state that I am doing my best to hold Mr. Atwood and Mr. Wahl, until we can hear from Mr. Stanton. I have just had a talk with Mr. Atwood, and he is willing to pay all of the 1909 taxes on this West Main street property. I will say that the 1908 taxes cannot be paid until the latter part of the year and the taxes that you have paid on this property so far this year, was for the year 1908. Mr. Wahl called me over the phone a few minutes ago, wishing to know if I had heard from you about the offer made by his customers that I wrote you about last Saturday and from what he said the parties will not wait more than one or two days longer. Very truly yours, J. W. Wagnon."

Exhibit E: "Galveston, Texas, July 26th, 1909. J. W. Wagnon, Oklahoma City, Okla.—Dear Sir: You no doubt have my special delivery letter by this time, telling of Mr. Stanton's continued absence in Canada, and of course can understand that it is beyond my province to give an answer for him; therefore it would do no good for me to wire you. Am sending him your letter today and will give you his address so that you may write directly to him each time you write me, and thus get an answer

from both parties, for as soon as I know what he will do, I will let you know my decision. In the meantime I have had an inquiry from a private party which I shall also submit to Mr. Stanton, and then he can decide and let me know and I will let you hear from me. I shall attend as promptly as possible to the matter, tho as you can see, I shall have to wait for Mr. Stanton. I sincerely hope that one of the three deals may be put thro as I am more than anxious to sell. I thoroughly appreciate your efforts in this matter, and as far as I am personally concerned, will be glad to pay my part of your commission of $300.00, if we make the sale to third party allowing you to put the deal thro. Mr. Stanton's address is Fort Erie, Ontario, Canada. Mrs. Forster Rose."

Exhibit F: "Oklahoma City, Okla., July 28, 1909. Mr. James Stanton, Fort Erie, Ontario, Canada. Wire me what you expect to do. Parties are waiting. J. W. Wagnon."

. Exhibit G: "Fort Erie, Ont., Can., Jul. 28, 1909. Mr. J. W. Wagnon, Oklahoma City, Okla. Will sell for twenty thousand no further taxes on us. Jas. Stanton."

Exhibit H: "Oklahoma City, Okla. July 28, 1909. Mrs. Forster Rose, 1604 31st Street. Galveston, Tex. Mr. Wahl's customers will not wait longer than today. J. W. Wagnon."

Exhibit I: "Galveston, Texas, July 28th, 1909. J. W. Wagnon, Security Bldg. Room 523-4, Oklahoma City, Okla. Am considering better offer no word from Mr. Stanton yet. Mrs. Forster Rose. 2:20."

Exhibit J: "Galveston, Texas, Jy. 28-09. J. W. Wagnon, Room 523 and 4 Security Bldg. Oklahoma City, Okla. As per previous message today we are considering better offer so call your deals off with Wahl and Atwood. Mrs. Forster Rose. 7:02 P. M."

Exhibit K: "Oklahoma City, Okla. July 28, 1909. Mrs. Forster Rose, No. 1604 31st Street. Galveston, Texas. Mr. Stanton telegraphed me this evening accepting Mr. Atwood's offer on the West Main street property. Mr. Atwood has made payment which is in keeping with your acceptance of the twenty-fourth. Send abstract for examination. J. W. Wagnon, 523 Security Bldg."

Exhibit A: "July 28th, 1909. Received from S. Atwood one thousand (1,000.00) dollars, part payment purchase price on lots 1, 2, 3, and 4 in block 1, in Orchard Park addition to Oklahoma City, Oklahoma, and all improvements on the said lots. The full purchase price to be paid on this property is twenty

thousand ($20,000.00) dollars. Standard Investment Co., Per. J. W. Wagnon, Agent."

The plaintiff in error assigns, and urges in his brief, two alleged errors of the trial court.

The first assignment of error, i. e., that the court erred in requiring plaintiff to make his amended petition more definite and certain, is without merit. The petition alleged:

"That the Standard Investment Company composed of J. W. Wagnon and ———— Ellis, were the authorized agents of defendants to sell the above-described property. That the said authority was in writing and subscribed by said defendants."

The motion asked that plaintiff be required to set up a copy of the writing referred to above in order that defendants could know whether to admit or deny its execution, and in order that the court could determine the legal conclusion pleaded by plaintiff, as to whether such writing constitutes the Standard Investment Company the authorized agent of defendants to sell the property described. The plaintiff was suing to enforce a specific performance of an alleged contract, through an agent, to convey lands. The agent's authority was alleged to be in writing, and it must have been apparent that the case would stand or fall, as it afterwards turned out, upon the construction by the court of this alleged authority in the agent. We cannot think that the court erred in requiring the plaintiff to set out the writing upon which the conclusion of authority was based. Besides, if the court erred, we think, under the doctrine announced in *Carle v. Oklahoma Woolen Mills,* 16 Okla. 515, 86 Pac. 66, and *Pappe v. Post,* 23 Okla. 581, 101 Pac. 1055, the plaintiff, by amending his petition in conformity to the views of the court and proceeding in the cause, waived the same.

The second assignment of error is that the court erred in sustaining the demurrer to the petition. The court below, in sustaining the demurrer in this case, considered whether or not the letters and telegrams exhibited by plaintiff conferred authority upon the agent to make a contract for the sale of the lots involved under the statute of frauds, and held that they did not. To determine whether or not the court erred in so deciding, is

the task before us. This involves an examination, and the construction of the letters and telegrams, to ascertain if there was such a meeting of the minds of all the parties concerned as to make a binding contract, upon which the court will decree a specific performance, and the passing of title which such decree would involve.

Where a transaction between two parties consists entirely of letters and telegrams, it is for the court to determine whether they constitute a contract. *American Jobbing Ass'n v. James,* 24 Okla. 460, 103 Pac. 670; *Bales v. Northwestern Consol. Mill Co.,* 21 Okla. 421, 96 Pac. 599.

It is conceded that a complete contract binding under the statute of frauds may be made through the medium of letters, writings, and telegrams, signed by and passing between the parties, when they are so related to the subject-matter, and are so connected with each other, that it may be fairly said they constitute one paper relating to the contract. *Halsell et al. v. Renfrow et al.,* 14 Okla. 674, 78 Pac. 118, 2 Ann. Cas. 286; *Beckwith v. Talbot,* 95 U. S. 289, 24 L. Ed. 496; *Ryan v. U. S.,* 136 U. S. 68, 10 Sup. Ct. 913, 34 L. Ed. 447; *Bibb v. Allen,* 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819.

The alleged contract in this case is for the sale of real estate owned jointly by two persons. It is manifest the purchaser was negotiating for the purchase of the entire estate. Therefore, to sustain it, the writings must show that the agent, at the moment of the attempted sale, was clothed with written authority from both owners to make the sale to the purchaser upon identical terms, and that it was so made.

The defendants in error maintain that, before a recovery would be authorized in this case, five things must concur: (1) Both parties must have authorized, in writing, a sale of the property upon the same terms. (2) This writing must confer authority not merely to sell, but to enter into a contract on behalf of principals. (3) The agent authorized to act must have acted in just the way he was authorized. (4) The agent must have executed a contract good under the statute of frauds. (5) The

purchaser must have tendered performance according to the contract made by the agent and the authority given the agent.

As we understand plaintiff in error's brief, they predicate their case on the letter of Mrs. Rose of July 24, 1909. They say in their brief:

"Mrs. Rose's letter of July 24 saying, 'I am willing to accept,' was a sufficient acceptance of Atwood's offer without more. A reasonable offerer would understand that for herself, at least, she accepted the offer and that the contract should become binding upon Mr. Atwood on the one hand and both Mrs. Rose and Mr. Stanton on the other, at the moment Mr. Stanton's acceptance for himself was communicated; provided Mrs. Rose did not withdraw or revoke her acceptance before that of Mr. Stanton."

We quote from counsel's brief to the end that the vital spot in the case may be brought into sharp outline. And, if upon an examination and construction of the various writings alleged to constitute the authority, it appears that at no time during the negotiations it can be said that the minds of all three parties were in unity of agreement upon the exact terms of a sale, and upon the conferral of authority to make the sale on such terms, then the other questions will not need consideration. We believe a careful reading of the writings set up fails to show that at any particular point of time the minds of the owners were in mutual agreement as to the terms of the sale, and, if they were not, then necessarily no written authority was conferred on the agent to make the sale on definite and agreed terms.

No contract is complete, without the mutual assent of all the necessary parties to all its terms. An offer to sell imposes no obligations until it is accepted according to its terms. So long as the negotiation remains open, neither party is bound; the one may decline to accept, or the offer may be withdrawn by the other. A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer. The offer of acceptance upon modified or added terms would be a new or counter proposal, which would require an acceptance according to its terms, before it could be said that a contract had been made.

9 Cyc. 245-248, note C; 7 A. & E. Ency. Law (2d Ed.) 113; *Green v. Cole*, 103 Mo. 70, 15 S. W. 317; *Braeutigam v. Edwards*, 38 N. J. Eq. 542; *Hartford, etc., R. Co. v. Jackson*, 24 Conn. 514, 63 Am. Dec. 177; Anson on Contracts, 2; *Minn. & St. L. Ry. Co. v. Columbia R. Mills*, 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376; American Cases on Contracts, 74.

To the end that our view of this case may be made to appear fully, we will discuss briefly these writings.

The letter of Wagnon to Mrs. Rose July 22, 1909 (Ex. B.), submits to her a proposition to purchase her "property on West Main street." The offer is definite as to price and cash payment; as to deferred payment it is in the alternative. The offer makes no allusion to securing the deferred payments, neither is anything said about taxes.

Mrs. Rose's letter to Wagnon July 24, 1909 (Ex. C.), after stating that her joint owner of the property is in Canada, says that she is willing to accept the offer as to amount of price, and selects one of the alternative propositions as to deferred payments, but adds the condition (not mentioned in the offer) that the deferred payments must be secured by a mortgage on the buildings and insurance in her favor. After stating specifically that she cannot answer for Mr. Stanton, she adds:

"I should not be willing to sell for $20,000.00, and pay another year's taxes, so please let me know at once, if the full expense we will have is commission and abstract."

Upon receipt of this letter the purchaser could have declined to secure the deferred payments by mortgage and insurance. So could he have refused to agree to pay the 1909 taxes. This may have been a very considerable sum of money, and of sufficient importance to prevent a sale. This letter of Mrs. Rose's of July 24th certainly was not an acceptance of the terms of sale proposed in Wagnon's letter to her, but was in reality a submission of a counter proposal. If she had been sole owner of the property, she could not have claimed with any show of reason that there was any legal obligation upon the purchaser to take the property, either on his own proposal, or on her counter

proposal. But, assume that the letter gave the agent authority
to not only procure a purchaser on the terms *she had proposed,*
but also to make the sale, that would not be sufficient in this
case, because the agent must have like authority at the exact time·
of the sale, from her co-owner, Stanton, to sell on identical
terms, to the same purchaser. The authority from each of the
owners to sell to the purchaser upon like terms must coexist in
the agent at the moment he attempts to exercise the authority.
And if such authority from one was given and later was given
by the other, but before the other gave it the one withdrew the
authority, then such authority from each owner would not co-
exist in the agent.

Now, following the assumption that Mrs. Rose's letter of
July 24th was a conferral of authority to sell on the new con-
ditions imposed by her, then we must look for the authority given
by Stanton, her joint owner. It is contended that this is found
in his telegram of July 28th (Ex. G.), in which he says: "Will
sell for twenty thousand no further taxes on us." This is the
only writing in the case that any one charges to Stanton, and,
to give even grounds for argument that it is a conferral of au-
thority to sell, it is argued that it must be read and construed
upon the theory that Mrs. Rose had, before it was sent, put
Stanton in possession of Wagnon's first letter containing the
proposition of Atwood, which she wrote she would send him.
Then to be as liberal with plaintiff as possible, assume again
that Stanton was in possession of that letter, although the peti-
tion does not so allege, and sent the telegram with reference to
it, and yet the inherent weakness of the alleged authority ap-
pears, in this, that Mrs. Rose did not accept the offer made in
Wagnon's letter, and never agreed to a sale upon its terms, and
never authorized or said anything indicating authority in Wag-
non to sell on the terms mentioned in his letter, but, if she gave
any authority to Wagnon to sell, it was upon new or added terms,
proposed in her letter of July 24th, as has been fully made to
appear. So, if she sent Stanton, as is claimed, Wagnon's letter
making Atwood's offer, and Stanton's telegram was in reference

to it, and was an acceptance of its terms, and a conferral of authority to sell upon them, then it follows that Stanton had authorized a sale on other and different terms from those demanded by Mrs. Rose, which would, in our judgment, be fatal to the claim of authority in the agent to make the sale. Enough has been said, in our judgment, to properly dispose of the case, but we notice briefly another inherent weakness in the petition filed in this case. On the same day it is claimed Stanton gave authority to sell, Mrs. Rose expressly withdrew any previous authority she may have conferred on Wagnon to sell, as will be seen by reading Exhibits I and J. The first of these (Ex. I) : "Am considering better offer no word from Stanton yet." The second (Ex. J) : "As per previous message today we are considering better offer, so call your deals off with Wahl and Atwood."

These telegrams were both set up as exhibits to plaintiff's petition, as part of the writings conferring authority on the agent. They were received the same day Stanton's telegram from Canada was received. If they were received before Stanton's, or before the agent acted, then no one could contend he acted with authority. From plaintiff's viewpoint, and to constitute any semblance of authority in the agent to act on that day, it was vital to show that Wagnon had Stanton's telegram, and that he acted before Mrs. Rose's withdrawal reached him, and yet there is no allegation in the petition, nor do the papers themselves show such to be the case. The presumption is that the pleader has stated his case in as favorable a light as his proof will warrant.

In the case of *Emmerson v. Botkin,* 26 Okla. at page 223, 109 Pac. at page 533, 29 L. R. A. (N. S.) 786, 138 Am. St. Rep. 953, this court says that:

"In the construction of a pleading nothing will be assumed in favor of the pleader which has not been averred, as the law does not presume that a party's pleadings are less strong than the facts of the case warrant."

See, also, *H. W. Metcalf Co. v. Morton,* 54 Fla. 531, 45 South. 463, 127 Am. St. Rep. 149, and *School Dist. No. 25 v. De Long,* 80 Neb. 667, 114 N. W. 934.

And, further, in arriving at the conclusions stated above we assumed that Stanton was in receipt of Wagnon's letter to Mrs. Rose submitting the proposition, and that he sent the telegram with reference to it. But it could well be said that this assumption is not well founded. A study of the correspondence will show that Wagnon had at least three deals in process of negotiation for this property at the same time—one with plaintiff, another with Wahl, and another with parties not disclosed—and that Mrs. Rose had an offer from still another party. On the 26th, Wagnon had written Mrs. Rose urging her to give an answer to Wahl's offer. On the 28th, Wagnon wired Stanton about some offer, not mentioning the parties, and on the same day wired Mrs. Rose that Mr. Wahl's customers would not wait longer than to-day. It is possible that Stanton's telegram referred to the offer of Wahl or some one else. The entire correspondence is set up to establish the agency of Wagnon and the petition does not aver that the telegram referred to the Atwood deal. It would have furnished as much basis to support a sale to Wahl as to Atwood.

There are other serious objections urged against the theory that these writings constitute authority to sell, and a sale, under the statute of frauds; but, in view of the conclusion we have reached on the points discussed, we will briefly mention, without discussing, some of them.

Wagnon's telegram recites no terms; the general presumption would be that, in such case, the sale was to be for cash. If so, the sale, being on credit, was not according to the terms authorized. The memorandum of sale is silent as to the name of the sellers. It is executed by the Standard Investment Company per Wagnon, agent. If any authority was given, it was only to Wagnon. None of the writings disclose the name in any way of the Investment Company. The correspondence nowhere describes the property more definitely than "your West Main street property." Under some authorities, this description might have been supplemented; but under others, equally respectable, it would be wholly insufficient. All of these last-mentioned

points have been investigated more or less; but it is not necessary to hold here their effect on plaintiff's case, but their mention illustrates the difficulties which have surrounded plaintiff from the beginning.

The trial court held that the amended petition failed to state a case in which a specific performance would be decreed. We think it held correctly, and that the judgment should be affirmed.

By the Court: It is so ordered.