CENTRAL MORTGAGE CO. v. MICHIGAN STATE LIFE INS. CO.

No. 3387.  Opinion Filed May 5, 1914.

(143 Pac. 175.)

1.  CONTRACTS—Breach of Indefinite Contract—Right of Action. Where parties in making an agreement fail to use language sufficiently definite to enable the court to ascertain to a reasonable certainty their intent, such agreement does not constitute an enforceable contract in law; nor will it support an action for damages, based upon a breach thereof.

2.    **SAME—Directing Verdict.** In this case the evidence shows that the agreement alleged to have been entered into between plaintiff and defendant was indefinite, vague, and uncertain to an extent that it fails to constitute an enforceable contract. **Held,** that, under section 924, Rev. Laws 1910, and likewise under the general law, such agreement is void, and the court did not commit error in directing a verdict for defendant.

3.    **PRINCIPAL AND AGENT — Agency—Question for Jury—Evidence.** Where there is any competent evidence bearing upon the issue of agency, the extent of the authority of such agent, and the evidence is conflicting, the issue as to such agency and the extent of authority of such agent are questions to be determined by the jury.

4.    **SAME—Question of Law.** In this case the only evidence relied upon as constituting agency was a certain letter written by the defendant to the plaintiff. **Held,** whether or not such letter constituted the relation of principal and agent was a question of law to be determined by the court; and it was not error to fail to submit said issue to the jury.

(Syllabus by the Court.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by the Central Mortgage Company against the Michigan State Life Insurance Company. Judgment for defendant, and plaintiff brings error. Affirmed.

*Baker, Pursel & Leith, John H. King,* and *Earl Bohannon,* for plaintiff in error.

*Maloney & Broaddus (Arthur Jones,* of counsel), for defendant in error.

RIDDLE, J. Plaintiff in error was plaintiff below, and defendant in error was defendant, and the parties will be referred to herein as they were in the trial court.

Plaintiff instituted this suit on the 20th day of February, 1911, seeking to recover $20,000 damages for breach of contract. It is stated, in substance, in the petition that on the 20th day of May, 1910, the defendant company, through its agent, W. C. Henry, who had authority to make such contracts, entered into an oral contract with plaintiff, in which defendant, through W. C. Henry, agreed to purchase from plaintiff within one year $100,000 worth of real estate mortgages and notes. Plaintiff was to

obtain said mortgages and notes from various parties in the state of Oklahoma, and defendant was to take the mortgages from the plaintiff at the rate of 6 per cent. interest, which would net the plaintiff 4 per cent. Said mortgages and notes were to become due in five years. Plaintiff, through its officers, was to furnish and did furnish defendant company life insurance policies, and was to use its influence and assist defendant in securing policies of no certain amount; that plaintiff caused to be furnished to defendant $19,000 worth of life insurance policies; also furnished $1,200 worth of mortgages. Plaintiff further alleged that it procured applications for about $3,600 worth of mortgages and sent them to defendant, but that defendant refused to take said mortgages, and also refused to buy or take any more mortgages under said contract, thereby resulting in damage to plaintiff in the sum of $20,000.

Defendant filed its answer, denying generally each and every allegation, specially denying that W. C. Henry was agent of defendant and that he had any authority to enter into any parol contract as alleged. Plaintiff filed a general reply, and set up affirmatively that, in the event Henry was not an authorized agent to make the contract, he acted as one who assumed to be an agent, and that defendant ratified the contract.

The substance of the testimony on the part of plaintiff necessary to be stated is as follows: Question propounded to George B. Shoenfelt, president of plaintiff company:

"I want to know what Mr. Henry said, both there at your office and at his office? A. Mr. Henry said that the Michigan State Life Insurance Company would take $100,000 worth in a year; I asked him if they would, and he said they would. He said they had taken $95,000 worth of mortgages from the Jefferson Mortgage Company within the year. He said they would, and then he wanted to know if I was going to give him insurance and how the stockholders were lined up. I said I could not speak for any one but myself; that I could take some. When we met in our own office, Mr. Gast took $10,000 and I took $4,000. The conversation was I should furnish this insurance, which I furnished. Q. Tell what it was up there? A. I was to furnish all the insurance, give him the name of prospects, as he called them, and, if I knew of anybody, or any of my local agents knew of

Central Mortgage Co. v. Michigan State Life Ins. Co.

any one, I was to give him the names, and he would go and see them. That was the nature of it."

It is admitted that one W. C. Henry was the general agent of defendant company for the purpose of soliciting and writing insurance, and it may be presumed, with such authority as is generally conferred upon general agents of insurance companies; but the only evidence of any authority of said Henry to represent the defendant company relative to the purchase of notes and mortgages is contained in plaintiff's Exhibit B, the same being a letter of date May 11, 1910, addressed to plaintiff company, which letter, omitting the caption, reads:

"Gentlemen: We are in receipt of your favor of the 9th, and beg to advise that we have bought a considerable number of Oklahoma real estate mortgages through our connection with the Jefferson Trust Company, McAlester, Oklahoma. The plan of this company is to invest the money in the localities where the premiums are received from our insurance policies and through our connection sell more policies, and I am today taking up the matter with Mr. W. C. Henry, manager of the Oklahoma state agency, who resides in Muskogee, requesting him to call and see you. Some arrangements may be made similar to our agreement with the Jefferson Trust Company, so that the business would be mutually satisfactory to all parties. Thanking you, I am yours very truly,

"FREDERICK APPS,
"President."

At the close of plaintiff's testimony, defendant filed its demurrer, in the nature of a motion for a directed verdict, which was by the court sustained, and a verdict returned by the jury in favor of defendant under direction of the court. Final judgment was rendered upon the verdict of the jury, and motion for new trial was filed and overruled, exceptions taken, and the petition in error and original case-made have been filed in this court for reversal of said judgment.

Plaintiff sets out the following assignments of error:

"(1) The court erred in charging the jury that they must find a verdict in favor of the defendant.

"(2) The court erred in rendering a judgment in said cause, because the same is contrary to the law and the evidence in said cause.

"(3)  The court erred in sustaining the demurrer of defendant to plaintiff's evidence.

"(4)  The court erred in not submitting the case to the jury for their consideration.

"(5)  The court erred in overruling plaintiff's motion for a new trial."

These various assignments raise only one general proposition; that is: Did the court commit error in directing a verdict for the defendant? While there are several points discussed by plaintiff, it will be necessary to give consideration to only two questions raised under the proposition stated: First. Assuming that W. C. Henry was the agent of defendant, was there an enforceable agreement made between plaintiff and defendant? Second. Under the facts shown, was there any competent evidence introduced to warrant the court in submitting the issue of agency to the jury? In our judgment, each of these questions must be answered in the negative.

Section 924, Rev. Laws 1910, provides:

"Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, *or so vaguely* expressed as to be wholly unascertainable, the entire contract is void." (Italics ours.)

It may be said that this statute is merely declaratory of the general law upon the subject. The substance of the testimony of plaintiff relative to the contract pleaded in the petition was that one W. C. Henry stated to Mr. Shoenfelt, the president of the plaintiff company, that the Michigan State Life Insurance Company would take $100,000 worth of notes and mortgages inside of a year, in consideration of the officers of plaintiff's company using their influence to secure insurance for defendant; that it had taken $95,000 worth from the Jefferson Trust Company from September to April. The record fails to disclose the character of the property upon which the mortgages were to be taken, other than real estate, and it may be implied that such real estate was situated somewhere in Oklahoma. There was no definite arrangement as to the maturity of the notes and mortgages, when they were to be furnished, whether all at one time, or at different times, or in what amount each note and mortgage should be; in

fact, no definite agreement that defendant would purchase said notes and mortgages, but simply a vague assertion or statement on the part of Henry that said defendant would so purchase said notes and mortgages—nothing more than a mere expression of opinion of Henry.  On the other hand, there was no definite agreement on the part of the officers of the plaintiff company as to whether they would give their full time or only occasionally use their influence in securing insurance for the defendant, or whether or not their efforts were to be for only one day, one week, one month, or one year—a mere general promise on the part of plaintiff that its officers would use their influence in securing insurance for the defendant company, and this is the only consideration for the making of the contract on the part of defendant. This fails to meet the requirements of the law in making an enforceable contract.  The courts cannot make contracts for litigants, and can only enforce them when the parties use language sufficiently definite to express their intention to a reasonable certainty.  Had the defendant in this case purchased the amount of notes and mortgages which it is claimed by plaintiff defendant agreed to purchase, paying therefor the price agreed upon, and the plaintiff had then refused to do any of the things which it is claimed it was to do, it would have been impossible for any court to compel the performance on the part of plaintiff.  Neither could a suit by defendant for a breach of contract have been successfully maintained, for the reason that the alleged contract is too vague, uncertain, and indefinite.  *Kramer v. Ewing,* 10 Okla. 357, 61 Pac. 1064; *Atwood v. Rose et al.,* 32 Okla. 355, 122 Pac. 929. 1 Am. & Eng. Ency. of Law, p. 116, states the rule as follows:

"A contract to aid and assist is void on the ground of uncertainty, and for lack of mutuality."

To the same effect, see *Case v. Lennington,* 3 N. J. Law, 853; *Barton et al. v. Spinning et al.,* 8 Wash. 458, 36 Pac. 439; *Davie et al. v. Lumberman's Mining Co.,* 93 Mich. 491, 53 N. W. 625, 24 L. R. A. 357; 9 Cyc. 248.  Many more authorities may be cited, but we think the proposition is elementary, and the statute above quoted is conclusive.

Was there any competent evidence introduced authorizing the court to submit the issue of agency to the jury? It is undoubtedly the rule that, where the evidence is conflicting and there is any competent evidence tending to establish agency and the extent of the authority of the agent, the issue as to such agency and the authority of the agent are questions to be determined by the jury. *Wrought Iron Co. v. Leach,* 32 Okla. 706, 123 Pac. 419. But in this case the only testimony in the record bearing upon the question of agency was in the nature of a letter, hereinbefore copied. It will require only a casual inspection of this letter to note that it is insufficient to constitute authority on the part of Henry, the alleged agent, to make the contract alleged to have been made. Although Henry was the general agent to prosecute the business of life insurance, yet this would not give him any authority to enter into a contract as claimed in this case, without special authority from the defendant. The letter introduced in evidence does not purport to give him any authority to make the contract. The letter addressed to Henry by the defendant, referred to in the letter copied herein, is not in the record, and we cannot presume it authorized Henry to enter into the contract alleged to have been made. All that we may infer from the letter relied upon by plaintiff is that Henry was authorized to look into the situation and take the matter up with the plaintiff and report to defendant.

The testimony relied upon as establishing the agency being in writing, it became a question of law for the court to decide, and not a question to be submitted to the jury. *Atwood v. Rose et al.,* 32 Okla. 355, 122 Pac. 929; *American Jobbing Ass'n v. James,* 24 Okla. 460, 103 Pac. 670; *Slatten v. Konrath,* 1 Kan. App. 636, 42 Pac. 399; *Bell v. Keepers,* 37 Kan. 64, 14 Pac. 542; *Warner v. Thompson,* 35 Kan. 27, 10 Pac. 110; 11 Am. & Eng. Ency. of Pl. & Pr. 83; *Goddard v. Foster,* 17 Wall. 142, 21 L. Ed. 589; *Battershall v. Stephens,* 34 Mich. 68. Until some competent testimony had been introduced, showing Henry's authority to represent the company in making the particular contract relied on, the testimony relative to the alleged terms and conditions of said contract was incompetent. It cannot be contended

that the letter herein quoted was a proposition submitted, and the reply referred to an acceptance of that proposition. The letters show they could not have been so intended.

It is also contended by the defendant in error that there is no competent evidence as to the measure of damages. Had there been an enforceable agreement made, it is possible the testimony would have been sufficient to submit the issue of damages to the jury; but it is unnecessary to determine this question, as the other questions we have discussed are decisive of the issues.

It is the further contention of plaintiff that the contract was ratified by the defendant. We have examined the record carefully, and, in our opinion, there is no testimony in the record making applicable the authorities relied on by plaintiff. It is the general rule, and, we may say, the universal rule, that, before the law of estoppel will apply, the testimony must show that the party against whom the estoppel is pleaded was in possession of all the material facts and circumstances bearing upon that issue. In this case there is no testimony in the record showing that the defendant had any information or knowledge relative to the terms of the contract set out in plaintiff's petition. *Oklahoma Portland Cement Co. v. Anderson,* 28 Okla. 650, 115 Pac. 767.

It is our conclusion, from the testimony shown in the record and the law applicable thereto, that the court committed no error in directing a verdict for the defendant.

The judgment of the trial court is therefore affirmed.

All the Justices concur.