## EMERY BROS. v. MUTUAL BENEFIT OIL CO.

No. 7597—Opinion Filed Sept. 10, 1918.

(175 Pac. 210.)

### Contracts—Mines and Minerals—Validity—Indefiniteness.

A clause in a contract for the drilling of an oil well that, "Party of the first part to have first choice on other drilling at price paid in Healdton Field by reliable operators," held, so indefinite and uncertain and lacking in mutuality, as to render it ineffective.

(Syllabus by Bleakmore, C.)

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by Emery Brothers against the Mutual Benefit Oil Company. Judgment for defendant, and plaintiff brings error. Affirmed.

H. A. Ledbetter, for plaintiff in error.

Burwell, Crockett & Johnson, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Carter county by Emery Brothers against the Mutual Benefit Oil Company, seeking recovery of damages for breach of contract. The trial court directed a verdict for defendant, upon which judgment was rendered; and plaintiff has appealed.

The parties entered into a written contract, by the terms of which plaintiff undertook, for a stipulated sum per foot, to drill and complete an oil and gas well on certain described lands of defendant. The contract contained the following provision:

"Party of the first part (plaintiffs) to have first choice on other drilling at price paid in the Healdton Field by reliable operators."

Plaintiffs drilled to completion the well contemplated by the contract and were paid therefor. At the time the location of such well was selected, locations for two other wells were designated by defendant. Under the terms of what is called a "supplemental verbal agreement," plaintiffs also drilled a second well on the premises, for which they were paid in full. No other drilling was done by them. The tools and other equipment used in such work were permitted to remain idle on the premises for some 30 days after the drilling of the second well, in evident anticipation by plaintiffs of their further employment in drilling additional wells; during which time it is contended that defendant led them to believe that their services would be required in the drilling of other wells, but at the end of such period they were informed that defendant purposed in the future to do its own drilling. It further appears that during such interval plaintiffs could and probably would have entered into and performed drilling contracts with other persons from which they would have realized a large profit, and it is for the amount of such

profit they seek recovery. It does not appear by the evidence that defendant drilled or procured to be drilled any additional wells, and it is not claimed that there was a supplemental or independent agreement relative to the drilling of such wells.

We are of the opinion that the trial court correctly directed a verdict for defendant. Save for the clause above quoted, it is admitted that the written contract was fully performed. The terms of such provision are so indefinite and uncertain, and lacking in mutuality, as to render it ineffective. Conceding that it was contemplated by the parties that more than one well should be drilled, the language employed in the contract affords no means of determining the number thereof, when the same should be drilled, whether upon the lands described or elsewhere. At most, the plaintiffs merely had 'the first choice on other drilling"—the opportunity of voluntarily determining to drill, or not to drill as they might prefer. They were not even bound to choose. Had defendant at any time demanded of them that they drill one or more additional wells, they could have refused without giving rise to a cause of action on account of such refusal.

In Arkansas Valley T. & L. Co. v. Atchison, T. & S. F. Ry. Co., 49 Okla. 282, 151 Pac. 1028, it is said:

"We understand the law to be that a contract which is uncertain as to its subjectmatter to such an extent that it is impossible to tell what the reciprocal obligations of the parties were, or where it does not prescribe some standard by which to measure the act to be performed or the result which it intends to secure, is void for uncertainty and cannot be enforced."

In Central Mortgage Co. v. Michigan State Life Ins. Co., 43 Okla. 33, 143 Pac. 175, it is held:

"Where parties in making an agreement fail to use language sufficiently definite to enable the court to ascertain to a reasonable certainty their intent, such agreement does not constitute an enforceable contract in law; nor will it support a action for damages, based upon a breach thereof."

In Rogers v. White Sewing Mach. Co., 59 Okla. 40, 157 Pac. 1044, it was held:

"A purported contract, by the terms of which R. is to procure a wagon and team and put a man on the road to sell the sewing machines of W., in consideration of which W. agreed to give R. the exclusive right to sell the machines of W., in H. county, so long as he should sell those machines, the machines to be shipped by W. as ordered by R. and paid for by R. at a price agreed upon, upon terms of credit agreed upon, there being no agreement as to any definite number of machines to be purchased of W. by R. and the termination of said agreement being solely at the pleasure of R., is so indefinite and uncertain. and so wanting in mutuality, as to be of no effect, and no action arises from the breach thereof."

It follows that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.