## WOOD & CO. v. VAN DEURSEN et al.

No. 16350—Opinion Filed March, 30, 1926.

Rehearing Denied Nov. 9, 1926.

(Syllabus.)

1. **Contracts—Contract not Void for Want of Mutuality Where Performance by Seller Excused by Certain Emergencies.**

The fact that a contract contains a stipulation excusing one of the parties thereto from absolute performance in case of an emergency does not render it void for lack of mutuality, and a stipulation in the contract that the seller of merchandise shall not be liable on the contract for any delay or failure of performance due to crop conditions, strikes, unavoidable delays and other causes beyond the control of the seller of the merchandise, does not render the contract void for want of mutuality.

2. **Same—Mutuality—Counter Obligations.**

A contract for the sale and purchase of goods is not void for want of mutuality because every obligation set up in the contract is not met by an equivalent counter obligation.

3. **Sales—Action Against Buyer for Refusal to Accept Shipment—Measure of Damages Where Goods Resold.**

In an action for breach of contract against the purchaser, for refusing to receive a shipment of merchandise, on arrival at his place of business, as per contract, the measure of damages is the contract price, with the legal rate of interest from due date, of purchase price, less the net amount received by the seller from the resale of the merchandise, after deducting all necessary expenses incurred in the preservation and resale of same, provided the seller procures the best market price reasonably available at the time.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action by John S. Van Deursen and William Van Deursen, a partnership, doing business under the firm name and style of Van Deursen Brothers, against Wood & Company, a corporation. Judgment for plaintiffs, and defendant appeals. Affirmed.

Lydick, McPherren & Wilson and Kittie C. Sturdevant, for plaintiff in error.

Abernathy & Howell, for defendants in error.

PHELPS, J. On December 9, 1919, plaintiff in error, who was defendant below, entered into a written contract to purchase from defendants in error, who were plaintiffs below, two carloads of onion sets, to be shipped from Dalton or Riverdale, Ill., to

Shawnee, Okla., on or about January 15, 1921. the purchase price of which was $1.65 per bushel. In the contract of sale defendants in error were designated as parties of the first part, and the contract provided that the terms should be "Net cash or sight draft attached to bill of lading," with a further provision in the contract that the—

"Above agreement and conditions are contingent upon crop conditions, strikes, unavoidable delays, including those of carriers, and other causes beyond the control of parties of the first part."

On the 18th day of January, 1921, defendants in error shipped one carload of such onion sets to plaintiff in error at Shawnee, Okla., drawing sight draft for the purchase price thereof, with bill of lading attached. The car arrived at Shawnee on or about January 21, 1921, and plaintiff in error refused to accept the car of onion sets or to pay the sight draft and receive the bill of lading. Plaintiff in error notified defendants in error not to ship the second car, and the onion sets contained in the car shipped and those to be shipped were sold for the account of plaintiff in error, the proceeds of the sale credited to plaintiff in error, and suit was commenced in the district court of Pottawatomie county for the balance of the purchase price. The case was tried to the court without the intervention of a jury, resulting in a judgment for plaintiffs in the sum of $2,053.80, with six (6%) per cent. interest thereon, from which judgment this appeal is prosecuted.

To reverse the judgment of the lower court plaintiff in error contends that the contract of sale is void because of its uncertainty and does not impose reciprocal obligations upon both parties thereto, and in support of this contention cites section 5017, Comp. Stats 1921, providing that:

"Where a contract has but a single object, and such object is unlawful, whether in whole or in part or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void"

—also citing Arkansas Valley Co. v. Atchison, T. & S. F. Ry. Co., 49 Okla. 282, 151 Pac. 1028; Central Mortgage Co. v. Michigan State Li.e Insurance Co., 43 Okla. 33, 143 Pac. 175; Emery Bros. v. Mutual Benefit Oil Co., 73 Okla. 94, 175 Pac. 210, and other authorities, supporting the proposition that where in a contract the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement so that each party has the right to hold the other to a positive agreement. In other words, both parties must be bound or neither is bound. We find no fault with this proposition nor with the authorities cited in support thereof, but a careful examination of the contract in question convinces us that the terms thereof are sufficien ly plain, unambiguous, and mutual, and that the authorities cited are not applicable.

The part of the contract against which counsel for plaintiff in error particularly direct their criticism is the clause above quoted. The first part of the contract merely provides that the first parties shall sell and furnish to second parties certain kinds grades and amounts o. onion sets at an agreed price of $1.65 per bushel, and then provides that the contract is—

"Contingent upon crop conditions, strikes, unavoidable delays, including those of carriers and other causes beyond the control of parties of the first part"

—and then provides that:

"Parties of the second part hereby buy such onion sets in the amounts and upon the terms and conditions herein set forth."

And, in view of the fact that the contract was made on the 9th day of December, 1919, and the onion sets were to be delivered on or about January 15, 1921, more than a year therea.ter, we are justified in assuming that it was understood between the parties that the onion sets bought and sold under the terms of this contract were yet to be grown, and it is the contention of defendants in error that the clause of the contract complained of was inserted therein for the special benefit and protection of the first parties, and in view of the language used, to the effect that the "above agreements and conditions are contingent upon * * * causes beyond the control of parties of the first part," we think this is a reasonable construction to place on the language used.

In support of their contention counsel for defendants in error cite 13 C. J. 337, section 187, stating that:

"The fact that a contract contains a stipulation excusing a party from absolute performance in case of an emergency does not render it void for lack of mutuality. So a stipulation that the promisor shall not be liable for any delay or failure of performance due to strikes * * * or other specified causes will not deprive the contract of mutuality"

—citing Peck v. Stafford Flour Mills, 289 Fed. 43, wherein the court used this language:

"Stipulations in a contract of sale excus

ing performance in case of emergencies do not destroy its mutuality."

They also cite Handley-Mack Co. v. Godchaux Sugar Co., 2 Fed. (2nd Ed.) 435, in which the following language is used:

"A contract for sale of granulated sugar by a refiner held not invalid for want of mutuality because of a provision, 'sellers will not be responsible for delivery of granulated, unless raws received,' there being an implied obligation on the part of the seller to use reasonable effort to obtain the raws."

Thus, we conclude that the provision of the contract protecting the seller in case of a crop failure, a strike, or other unavoidable casualty was a valid provision intended for the seller's benefit, and does not render the contract void for want of mutuality.

It is next contended by plaintiff in error that, even though it be held that the contract was not void for uncertainty, and lack of mutuality, plaintiff in error is entitled to be relieved from the obligations imposed by the contract and reject the shipment if crop conditions did not justify the fulfillment of the agreement; or, in other words, if crop conditions were unfavorable from the standpoint of the plaintiff in error, then the agreement to purchase could be canceled and abrogated under the provision of the contract which says the plaintiff in error "buys such onion sets in the amounts and upon the terms and conditions herein set forth." While it is the contention of defendants in error that the clause in the contract, "and other causes beyond the control of the parties of the first part," clearly indicated that the conditions of the contract were for the exclusive benefit of the vendors.

In the trial of the cause plaintiff in error, claiming that under the terms of the contract it was entitled to the same privileges to cancel that were given the vendors, attempted to show that crop conditions in Oklahoma were unsatisfactory and that by reason thereof it was authorized to refuse the shipment; however, it appears from the record that it made no such claim until after the shipment was made. On January 4, 1921, defendants in error wrote plaintiff in error calling its attention to the fact that they had not yet received shipping instructions from the buyer, and in reply to the letter plaintiff in error made an offer to pay $400 to the vendors instead of accepting the onion sets; and on January 14th plaintiff in error wired the defendants in error urging an answer to this proposition, and on January 15th defendants in error wrote plaintiff in error, declining the proposition. On January

20th, after the car had been shipped, plaintiff in error wired defendants in error that it could only accept one car of the onion sets, and on January 24th again wired claiming the contract void, but as a compromise and to obtain release from the terms of the contract offered to pay $400 in settlement, or to accept and pay for the car already shipped; and on January 25th again wired, claiming the contract was void, and refused to accept either car unless the offer of the previous day was accepted, all of which propositions were rejected by defendants in error, who elected to stand upon the contract. Certainly, if the contract was void these negotiations would not make it valid; but in view of the record, we have no difficulty in reaching the conclusion that the trial court committed no error in refusing to accept this theory of the defense.

In Texas Seed & Floral Co. v. Chicago Set & Seed Co. (Tex. Civ. App.) 187 S. W. 747, in the third paragraph of the syllabus we find this language:

"* * * A contract does not lack mutuality because every obligation is not met by an equivalent counter obligation, because where the act of one depends upon the act of the other, an obligation to allow the thing necessary for the completion of the contract is necessarily implied."

And, following the reasoning therein, we conclude that the validity of the contract in question does not necessarily depend upon giving each party to the contract the same rights and privileges under each and every condition or proviso set out in the contract—particularly is this true when it is apparent from the whole contract that the proviso therein, upon which plaintiff in error seeks to rely, was never intended to apply to it, but to the seller of the goods only.

It is further contended by plaintiff in error that, inasmuch as the goods shipped were never received by it, title thereto did not pass to it, but remained in defendants in error, and that this question is material as affecting the measure of damages, as the statutes provide that where title has passed the measure of damages is the purchase price of the goods, but where title has not passed the measure of damages is the difference between the contract price and the reasonable market value. The contract of sale plainly provides that the goods were to be delivered on board the cars at Dalton or Riverdale, Ill., and that the terms should be net cash or sight draft attached to bill of lading, and under the plain provisions of the contract, when defendants in error loaded the goods on the cars, consigned them to

plaintiff in error and drew sight draft with bill of lading attached, defendants in error had complied with the terms of their contract and were entitled to recover the purchase price agreed to be paid.

In the briefs of plaintiff in error they contend that defendants in error failed to comply with their contract in that the onion sets were shipped from South Holland, Ill., instead of from Dalton or Riverdale, Ill., but apparently that question is raised for the first time in the briefs filed in this court, and will, therefore, not be considered here.

As to the second car, which plaintiff in error specifically instructed defendants in error not to ship, it appears that the goods were sold upon the best market obtainable and the amount realized therefrom credited to the account of plaintiff in error, as was also the car that was shipped after it reached its destination, and in the light of the entire record, fair dealing and common honesty demands that plaintiff in error should pay for the goods according to the terms of its contract.

The judgment of the trial court is therefore affirmed.

NICHOLSON, C. J., and HARRISON, MASON, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 13 C. J. p. 337 §187. (2) 13 C. J. p. 333 §179; p. 341 §191 (Anno). (3) 35 Cyc. p. 598. See under (1,2) 6 R. C. L. p. 689; 2 R. C. L. Supp. p. 183. (3) anno. 42 L. R. A. (N. S.) 671; 24 R. C. L. p. 109.